## David Verplank v. Harvey B. Hall.

*Description of premises: Initial point: Fractional quarter.* Where the initial point in the description of premises in a deed is the south-east corner of the north half of the south-east quarter, fractional, of a section, and the quarter section is made fractional by a meandered lake, so situated as to cover the eastern and central portions thereof, and the parcel described was carved out of the north half within a year after the same was patented, the south-east corner in question is construed to be the point which constituted the south-east corner of the land· as it was surveyed out and patented by the government, which locates it on the meandered line of the lake; and the fact that the w.iters of the lake have since receded, cannot change the boundaries of the lands described, as previously located.

*Equity pleading and practice: Bills to quiet title: Possession: Proofs.* Under a bill to quiet title, where the answer relies upon an adverse right depending entirely upon the location of the description, the proof of possession is not required to be as strict as when there is a defense distinctly set up and relied upon.

*Heard April 11.    Decided April 15.*

Appeal in Chancery from Calhoun Circuit.

*Brown & Patterson* and *C. I. Walker,* for complainant.

No counsel appeared for defendant.

COOLEY, J.

This case was submitted without argument on either side. The bill was filed to quiet the title of complainant to a piece of land described as being the south part of the north half of the south-east quarter, fractional, of section number nine, in town two south, of range four west, beginning at the south-east corner, thence running south eighty-six degrees west, twelve chains and fifty links; thence north five degrees west, twelve chains and eighty links; thence north eighty-six degrees east, twelve chains and fifty links; thence *south* five degrees east, twelve chains and eighty links, being sixteen acres of land.    It is not denied that complainant owns land of this description, but the disputed questions relate to its location.    It appears that the north

half of the south-east quarter of the section named is rendered fractional by a small meandered lake, which occupies the central part of the east end of the quarter section, leaving on the north-half of the quarter only 47 87-100 acres, and on the south-half only 52 13-100 acres of land, embraced in the fractions respectively as surveyed under the authority of the United States and patented to the original purchasers. It is the existence of this lake, and the peculiar shape of the north fraction, that raise the question in dispute between these parties.

The sixteen-acre parcel, it will be seen, is in nearly a square form. If in locating it the initial point should be taken on the west line of the section, at a point half way between the north and south lines of the quarter—which would be the initial point of a similar description to be taken from a half-quarter which was not fractional—then the land, according to the original survey, would have been nearly all under the waters of the lake. But this, the defendant insists, is the proper location of the land described. On the other hand, the south part of this north half of the quarter section as surveyed, is the part lying west of the lake, and the most south-easterly point is where the line between the north and south halves intersects the meandered line on the west side of the lake. Taking this as the initial point, as complainant insists should be done, the sixteen acres is dry land. The question is complicated by the fact that the waters of the lake for a long time have been receding, so as to leave more and more land on the west side, and so as to make the south-east corner, if a point on the shore of the lake is to be taken as such, a movable point gradually advancing to the east. If, therefore, a conveyance has at any time been made with reference to such a moveable point, the question of the actual location of the land conveyed would be, as the evidence in this case shows, one of very great doubt and difficulty, by reason of the uncertainty as to the actual location of the shore line at any specified time.

VERPLANK v. HALL.

The half-quarter appears to have been patented to Sunderland Pattison in 1839. The sixteen acres in question was carved out of it by deed given in 1840. It is not probable that the waters of the lake had receded essentially up to that time; and when this conveyance was made, which purported to carve out a particular parcel of land from a larger parcel which only a year before had been conveyed by the government by a particular description taken from its surveys, and the same description was adopted in the deed, we have no reason to suppose that any other or different land was understood by the parties as embraced by it than was embraced within the surveys from which the government description was taken. In other words, when the party takes as the starting point in his conveyance the "south-east corner" of the north half of the quarter section, we are to understand him as meaning the point which constitutes the south-east corner of the land as the same was surveyed out and patented by the government. Taking this to be the meaning, the south-east corner of complainant's land must be located in accordance with complainant's view; that is to say, on the border of the lake as surveyed by the government, at the point where the line between the north and south halves of the quarter section would intersect the same. We think this the true construction of the deed under which complainant derives title, and consequently that he is entitled to the relief prayed. It is also in accordance with the practical location of the land by the parties to the first conveyance.

Inasmuch as the defendant did not appear in this court, and there is some complaint of desertion by counsel, we have examined the record with care to see that nothing that would tell in his favor should be overlooked. But we discover nothing bearing upon the main subject of dispute that tends to cast doubt upon complainant's case. Some question might perhaps have been made regarding the sufficiency of the evidence of complainant's possession; but, as defendant by his answer distinctly plants him-

self upon an adverse right, depending entirely upon the location of the description, the complainant was not called upon to put in such strict proofs of possession as might have been requisite in other cases.

The circuit court in chancery having reached a different conclusion, its decree must be reversed, with costs, and a decree entered in this court in accordance with the prayer of the bill.

The other Justices concurred.